Apgar v. Apgar.

MARY APGAR et al., appellants,

*v.*

NANCY L. APGAR et al., respondents.

1. Under the "Act to authorize the sale of lands limited over to infants, or in contingency, where such sale would be beneficial" (*Rev. p. 1052*), the court has power, in a proper case, to direct a sale of the vested estates of persons legally competent, against their will. *Quære*, whether the court has the power to order sale of estates which were so vested before the statute was passed.

2. In the present case, it clearly appearing that a sale would be injurious to the interests of the tenant in possession, and it not being evident that it would promote the interests of the remaindermen, the court refused to order a sale.

On appeal from a decree advised by Vice-Chancellor Bird, whose opinion is reported in *Apgar's Case, 10 Stew. Eq. 501.*

Mr. R. S. Kuhl and Mr. J. G. Shipman, for appellants.

Mr. J. N. Voorhees, for respondents.

The opinion of the court was delivered by

DIXON, J.

Paul Apgar, died in 1855, seized of a farm of about ninety acres in Hunterdon county. He devised the farm to his widow, Nancy, during her widowhood, with remainder to his daughter Mary for life, and the remainder in fee to the heirs begotten of the body of his daughter. Nancy, the widow, remarried in 1857, and thus Mary, the daughter, became tenant for life in possession. She is over fifty-eight years old, and the persons who, if she should die without other issue, would take as the heirs begotten of her body are her four children, Nancy Apgar, Sarah Ellen Alpaugh, Mary Jane Apgar and Louis J. Apgar. These are all of full age.

In 1882, two of the tenants in remainder, Nancy and Sarah Ellen, presented to the chancellor a petition praying that a sale of the farm might be ordered, which the tenant for life, Mary, and the other tenants in remainder, Mary Jane and Louis J., opposed. The sale was asked for under the "Act to authorize the sale of lands limited over to infants, or in contingency, in cases where such sale would be beneficial," approved March 20th, 1857. *Rev. p. 1052.*

At the time this act was passed, the life estate of Mary under her father's will had become vested and she was of age, and upon the argument in this court a question was suggested whether it was within the power of the legislature to compel an owner of a vested estate, competent to manage her own affairs, to submit to a sale of her property, for no delinquency of her own, and for the benefit of other private persons. In our view of the facts in the present case, it will not be necessary to decide this question.

Another suggestion also was made, that a correct interpretation of this statute did not authorize the court to direct a sale of estates vested in tenants legally competent, against their will; that the inconvenience which brought about its enactment was the inability of such tenants to make a good title to the fee when their estates were united with contingent rights or rights of infants, and that the sole design of the statute was to remedy this

inconvenience by enabling the court to dispose of these otherwise unsalable rights. But the language of the act is scarcely consistent with this interpretation. The authority expressly conferred upon the court is to sell the land in fee, and there is no declaration in the act that objection from any owner shall absolutely bar a sale. Ever since the enactment of the law, it has been treated as empowering the court to dispose of the entire estate, when the title stood in the condition described, and this construction, so long practiced upon and acquiesced in, should not now be disturbed, unless for reasons clearly satisfactory.

But if the court has power to sell the vested estates of those able, but unwilling, to convey their own property, obviously the power should be sparingly exercised. The right to control one's own ought to be preserved as far as is practicable, and every reasonable intendment made in favor of its maintenance.

In the present case, therefore, the question is whether the facts on which the court may act are so clearly shown as to make it the duty of the court to order the sale.

In the opinion of the learned vice-chancellor they are; but his conclusions rest upon what we consider somewhat erroneous views of the law. Speaking of that provision of the statute which declares that, if upon inquiry, it appears that the situation and prospective value of the lands are such that it would be for the interest of any person who might own the same in fee to sell the same, then the chancellor shall direct such sale, he says that, although the legislature could not have intended to ignore the rights or interests of the life-tenant, yet this clause evidently contemplates the interests of the owners of the fee only, and certainly subordinates, if it does not exclude, the interests of the owners of the particular estate. We do not so understand the statute. We consider its purpose to be that the interests of the owners of both particular and future estates are to be regarded, and the advisability of sale to be decided as it would be by a prudent owner of the fee simple in possession. The present situation and prospective value of the lands are to form the chief grounds of decision. The act itself gives prominence to neither of these considerations over the other; but in the nature of

things it would seem that if either is to have the greater weight, it should be the present situation; for that is capable of ascertainment, while the prospective value is necessarily the subject, more or less, of conjecture. The vice-chancellor reached his conclusion in favor of a sale, by laying undue stress upon the probable interest of those whose estates were not yet in possession.

Looked at from our standpoint, the circumstances do not seem to call for a sale.

The life-tenant is provided by the farm with a home for herself, her husband, her mother, her daughter, her son and his family, and with the means of living for the first three. The value of the farm is estimated at from $3,000 to $4,000. It is plain that the interest on such a value would not supply nearly so much to the owner of the particular estate. Her interests would be very injuriously affected by converting the estate into money. Turning to the evidence touching the prospective value of the land, we find it very conflicting. Many witnesses think that the husbandry of the occupants has not generally been such as it ought to have been. It appears, however, to be conceded that, within four or five years prior to the institution of these proceedings, an improvement has taken place in this respect, and some witnesses express the opinion that the condition of the farm is better than when it came into the hands of the present tenant. Taken altogether, the evidence does not afford the basis for a firm conviction that the property will seriously deteriorate in value during the continuance of the life-tenancy. In the absence of such a conviction, the palpable interests of the tenant in possession should control our judgment and lead us to forbid a sale.

The condition of the title seems to fortify this conclusion. The circumstance which gives the court power to sell the property is, that it is limited over to the heirs begotten of the body of Mary Apgar, and she being still alive may, in legal possibility, have other children than those now *in esse*. But since Mary Apgar is about sixty years old, this legal possibility is scarcely an actual one, and a title made by Mary Apgar and her living children would probably be safe. Now, if this mere legal possibility did not exist, the life-tenant would be secure in her possession. The

court is very reluctant to exercise a power that depends on so
slender a thread, when it would override both her wishes and
her interests.

The decree below should be reversed.

*Decree unanimously reversed.*